Cohen *vs.* Ward.

A. G. & T. C. FOSTER; J. HILL, for plaintiff in error.

ROBINSON & BRANCH, for defendant.

SOLOMON COHEN, plaintiff in error, *vs.* JOHN E. WARD, defendant in error.

An action was brought by the plaintiff against the defendant, to recover damages for a breach of an implied warranty of title to fifty shares of Central Railroad stock, alleged to have been sold by the defendant to the plaintiff in the month of April, 1863, and on the trial, it appeared from the evidence in the record, that the defendant sold to or exchanged with the plaintiff, one hundred shares of Central Railroad stock for $20,000 00 of Confederate States eight per cent. bonds. The contract was consummated between the parties, by the delivery and transfer of the railroad stock to the plaintiff, and the delivery and transfer of the Confederate bonds to the defendant, in pursuance of that contract; but the defendant did not have the title to fifty shares of the railroad stock transferred by him to the plaintiff, the title thereto being in other parties. The jury, under the charge of the Court, found a verdict for the plaintiff for $2,000 00 in gold. The defendant made a motion for a new trial on several grounds of error alleged, as to the charge of the Court to the jury, and as to refusals to charge as requested, and because the verdict was against the law and the evidence. The Court overruled the motion for a new trial, and the defendant excepted.

*Held*, That under the pleadings and evidence in the case, the plaintiff was entitled to recover from the defendant for a breach of the implied warranty of title to the fifty shares of railroad stock sold and transferred by the defendant to the plaintiff under the contract, to which he had no title, and it made no difference under the law of this State,

whether it was a sale of stock for bonds, or a barter, or exchange of stock for bonds.

As this was a Confederate contract, the measure of damages for a breach of the warranty of title to the fifty shares of stock, should have been left to the jury under the provisions of the Ordinance of 1865, to have been decided by them according to the principles of equity as applicable to the contract between the parties.

Although the Court gave in charge to the jury the whole of the Ordinance of 1865; yet, in other parts of the charge, the jury were restricted to the value of the Confederate bonds *at the time the contract was made.* It was error so to restrict the jury; They had a right to consider their value at any time, and render a verdict according to the principles of equity applicable to the contract between the parties.

Barter and Sale. Scaling Ordinance. Tried before Judge SCHLEY. Chatham Superior Court. May Term, 1870.

Ward averred that Cohen was indebted to him $10,000 00, in that, on the 17th of April, 1863, in consideration that Ward would buy from him fifty shares of the capital stock of the Central Railroad & Banking Company for $200 00 per share, Cohen promised that said shares were his, with full power and right to convey it, and Ward thereupon then paid him $10,000 00 and took said stock; but Cohen had no title to said stock, nor right or power to convey it, but it belonged to others, who since claimed and obtained possession of it, whereby Ward wholly lost the same. A second count was for $10,000 00 received by Cohen on said day, to Ward's use.

Cohen pleaded that he agreed to exchange one hundred shares of such stock to Ward's agent for $20,000 00 in the eight per cent. bonds of the Confederate States of America; that he then and there owned three hundred shares, and from it took scrip representing $10,000 00, nominally, but then worth $20,000 00 " in currency," and without examining the dates delivered them to said agent, and he delivered to him said bonds, and did not notice that any of it was sequestrated stock, nor was any inquiry made on that point, nor did Cohen find it out till 1866. By the result of the war the bonds

and sequestrated stock alike became worthless, and the consideration of said contract has wholly failed. If, however, this transaction is to be opened, Ward owes Cohen for the fifty shares of unsequestrated stock and its dividends. And he tendered back said bonds.

On the trial, the evidence was substantially as follows: It was shewn that the company refused to let Ward have but fifty of the one hundred shares, because the other fifty were sequestrated, and the record of the cause touching these fifty sequestrated shares in which this Court held that Ward got no title as to them, was read in evidence   See Ward *et al.,* *vs.* The Central Railroad & Banking Company, 37th Georgia Reports, 515.

Dr. Willis, Ward's said agent, then testified that he knew of the purchase of certain shares of Central Railroad stock by the plaintiff from the defendant, in the spring of the year 1863. He made the purchase for the plaintiff. The price of the stocks was about $200 00 per share—perhaps five or ten per cent. more. Payment was made in Confederate States eight per cent. bonds, and witness thinks $21,000 00 or $22,000 00 in bonds were given for one hundred shares Central Railroad stock. The payment was made in bonds at the instance of the defendant. Thinks in the market they commanded a small premium; but how or where they were procured, witness cannot remember. There was a difference in the value of Central Railroad stock which had been sold at sequestration sale and that which had not, the sequestration sale being at lower prices than that sold as non-sequestrated stock, at private sale. At the time of the sale nothing was said about the stock having been sequestrated or not having been sequestrated; for witness never suspected its having been sequestrated. Witness' connection with the transaction ceased with its consummation, and he knew nothing of it afterwards.

He was asked to state whether the following is not a correct history of the whole transaction, or how otherwise: That you came into Mr. Cohen's office and asked if he would sell

Cohen *vs.* Ward.

any of his Central Railroad stock; that at first he refused, but, after a while, he said, 'Well, I will transfer one hundred shares of my stock, if you will give me $20,000 00 in bonds;' that to this you agreed, and you and Mr. Cohen were to meet at the bank; that, when you came, you brought the bonds, and a paper on which you had calculated the interest, and demanded that in currency; that Mr. Cohen refused this, saying he would pay no interest unless he received payment for the accruing dividends; that you went off to consult Mr. Ward, returned, and abandoned the claim of interest; that Mr. Cohen handed you the scrip, signed by the President and Cashier, and received from you the bonds;" the witness said: "The narration of facts embraced in this interrogatory is very much in accordance with my recollection, except as to the incipiency of the transaction. I think that it was in this wise: The defendant and I were Directors of the Bank of the State of Georgia, and one morning after the Board, conversation turned upon the prices of stocks; and during the conversation, I offered defendant $200 00 per share, for one hundred shares of Central Railroad stock. He said he would give an answer within an hour or two, and during the morning I called at his office and was informed that he would sell, payable in Confederate eight per cent. bonds; but the price finally agreed I cannot recollect. Mr. Cohen did not say anything to mislead me as to the kind of stock he would transfer; nor did I ask him any questions. I could have questioned him, and I have no doubt he would have answered truthfully; and I would have done so, had there been anything to excite apprehension as to the kind of stock he would transfer.

Abraham Backer, of New York City, testified: On or about the 10th of April, 1863, defendant stated that he had recently sold to the plaintiff one hundred shares of the Central Railroad and Banking Company stock, at two for one, and was anxious to invest the funds he had received upon that

sale. Witness asked him if it was confiscated stock which he had sold to the plaintiff. Defendant replied no; it was his own old stock. Witness told him he was astonished that he would sell his old stock. Defendant told witness he had received of the plaintiff two dollars for one on the par value of said stock, but he did not mention in what sort of Confederate money or securities such payment had been made. Witness' belief is that two for one was at the time a fair market value for Central Railroad stock. Confiscated Central Railroad stock, to the best of witness' recollection, was then selling for $125 00 to $130 00 per share, Confederate money. Witness' information is derived from his having dealt in Central Railroad and other stocks in the Savannah market at that time, and from his personal knowledge of the values, at the time, of this and other stocks.

Thomas M. Cunningham, Cashier of the Central Railroad and Banking Company of Georgia, being sworn, produced the transfer book of said company, showing that on 17th April, 1863, defendant caused to be transferred to plaintiff one hundred shares of the capital stock of said company, in one scrip or certificate of stock, the par value of which stock was $100 00 per share, and that the transfer was from two scrips—each for fifty shares—standing in the name of defendant, and that fifty of said shares were for sequestrated stock. He further testified that, after the war, say ...... day of ........., 186..., Mr. Saussy, with power of attorney from plaintiff to that effect, applied to said company to transfer the said one hundred shares to George S. Owens, Esquire, which proposed transfer said company refused to allow, except as to fifty of said hundred shares, on the ground that the other fifty shares were sequestrated stock, the title to which was not in plaintiff.

On the cross-examination, witness stated that, on the 4th day of September, 1862, there were transferred, on said books, one hundred shares of sequestrated stock, to Octavus Cohen, by the Confederate States Sequestration Receiver.

On the 10th of September, 1862, fifty of those shares were transferred to defendant by Octavus Cohen, and on same day, defendant transferred fifty good shares to Mr. Webber. Witness further stated that, as he believed, there was, at the time, a slight market difference between the value of sequestrated and non-sequestrated stock; the precise difference he did not know; that Confederate States Treasury notes were then the only currency; that such currency had a capacity to purchase Confederate States eight per cent. bonds, and that said bonds then commanded a premium, the precise extent of which he did not know. He further testified, that after the Central Railroad and Banking Company of Georgia first began to declare dividends, some years before the war, it continued so to do until December, 1864, when it ceased to do so until December, 1866—the dividends, when declared, being always equal to the legal rate of interest, and generally at the rate of five per centum for six months. He further testified that, after, as before, said company began to declare dividends, its stock was generally at par; sometimes considerably above par; that, at the time of testifying, it was about $118 00; and, since the war, has been as high as $134 00. He further testified that, in 1863, gold was a commodity, rather than a standard of value; but that he considered stock in the said company equal to par during the war, and more than par after December, 1867. Witness verified Barber's table of the value of Confederate money, as contained in the 34th Volume of Georgia Reports, as generally correct, in his opinion. Witness stated, further, that sequestrated stock was traceable as such, though not always easily.

Plaintiff also proved that, on the 12th day of April, 1866 gold was worth from $138 00 to $140 00, as compared with currency of the United States.

Solomon Cohen, the defendant, being sworn, testified that, the testimony of Willis was, in the main, correct, although he seemed not to remember the details exactly; but that Abra-

ham Backer's testimony was a tissue of falsehoods; that he never had any such conversation with Backer, as the latter related. Dr. Willis asked witness (Cohen) to sell one hundred shares of Central Railroad stock, at two for one; at first, witness refused, but he afterwards agreed to transfer one hundred shares of said stock for $20,000 00 of Confederate States eight per cent. bonds; that to this he agreed. Witness and Dr. Willis met, by appointment, at the Central Railroad Bank—he to deliver the bonds, and witness to transfer the stock. At this meeting at the bank, Willis handed witness a paper, on which was a calculation of interest, and asked for its payment in currency. Witness said, "No, if I pay you the accrued interest on the bonds, you must pay me the probably accrued dividends on the stock; it must be a clean swap." Willis then said he must go and consult with Mr. Ward. It was then the first time witness knew Dr. Willis was purchasing for another and not for himself. Dr. Willis returned to the bank, withdrew the claim for interest and handed witness the bonds; whereupon witness transferred the stock to Mr. Ward, and handed to Dr. Willis the scrip for the one hundred shares. At that time, and until after the war, witness did not know that any of the stock transferred to Mr. Ward had been sequestrated. No questions were asked; and, if Dr. Willis had desired information on the subject, he could easily have obtained it. Witness then owned between three and four hundred shares of the stock; and that he took from his tin box scrip for one hundred shares, without looking at the dates, or investigating whether any had been sequestrated, or not; for, as far as he knew, there was, at that time, no difference, in the market value, between sequestrated and non-sequestrated stock. Later in the war, there was a difference, but not such difference as stated by Backer. Dr. Willis, as witness thought, said there was a small difference. At the time when he transferred the stock to Ward, witness' title was perfect; the failure of the Confederacy rendered the title to fifty shares bad, under the decisions of the Courts, but

the same cause rendered bad and of no value the bonds witness received from Mr. Ward in exchange for witness' stock. He gained, by the trade, at least $5,000 00; witness lost all. The transfer to Mr. Webber, (mentioned by Mr. Cunningham in his testimony,) was for Octavus Cohen, who repaid witness [by the] fifty shares of sequestrated stock, transferred to Mr. Ward, and who made the transfer of such sequestrated stock, as stated by Mr. Cunningham. On their face, the bonds were clearly illegal, as showing that they were issued for war purposes. Witness retained the bonds thus exchanged; and, except the coupons, which must have been collected, witness lost all. He further stated, that, although he had the bonds still, he could not swear to their identity, amongst others he had of the same kind. He had given some of that kind away, in Europe and in this country, as curiosities.

On the cross-examination, witness stated that he did not know that the Confederate States eight per cent. bonds were at a premium at the time of the trade; later in the war, they were. He did not now know what the price of gold was at the time of the trade. Witness was no speculator in gold, or any other thing. During his stay in Europe, in the years 1867 and 1868, his exchange cost him from $135 00 to $151 00. He knew of no difference in value, between eight per cent. bonds and currency, at the time of the trade. He had, as already stated, exchanged fifty shares of original (or non-sequestrated) stock for the fifty shares of sequestrated stock transferred to Mr. Ward.

The evidence here closed. At the conclusion of the argument, counsel for defendant presented, in writing, to the Court the following requests to charge:

1st. That if the jury find, under the evidence, that this is not the case of a sale, but of exchange or barter, the plaintiff cannot recover, the variance between the allegation and proof being fatal; that a plaintiff cannot sue on one contract and recover on proof of another contract.

2d. That if they find, under the evidence, that it is a case

of sale and not of barter, the rule of damage is what the plaintiff paid, with interest.

3d. That if the jury find, under the evidence, that payment was made in Confederate bonds, and that Confederate bonds were issued to aid the rebellion, it is, in law, no payment; Confederate bonds, if issued for that purpose, being illegal and void, cannot be a valid consideration for the contract of warranty, or for any contract.

4th. That if the jury find that the bargain was made for Confederate bonds, then the trade between the parties was illegal and cannot be enforced.

5th. That if the jury find, under the evidence, that it is a case of exchange or barter, then there was no warranty of title, and the plaintiff cannot recover.

6th. If the contract was not tainted with illegality, then, under the laws of Georgia, the jury should find the value given on either side, and if Cohen's stock was worth more than Ward's bonds, they should find the balance due on the whole transaction to Cohen, if the contract was entire and not divisible.

The Court charged as follows: 1st. The first question of law is upon the warranty of title, and under our Code is in substance: "That in all cases of the sale of personal property, unless there is an express exception, or, from the nature of the transaction, there is an exception, the seller warrants to the buyer that he has a valid right and title to sell, and that he gives a good title to the purchaser. That if the title to such property is not good and valid, and the purchaser losses the property from a defect in the title, the seller is liable to the purchaser for the damages sustained." Now should you find that Mr. Cohen sold to Mr. Ward any number of shares of the Central Railroad stock, as alleged in plaintiff's declaration, I charge you that he warranted the title to such stock unless the defendant has shown to your satisfaction by the proof adduced, that this sale falls under one of the exceptions of the law, wherein a warranty is not implied. Just

Cohen *vs.* Ward.

here, as I have seven requests from the defendant to charge you in this case, I will take take them in their order. (He read the first request.) The plaintiff's action is for damages by reason of the alleged failure of title to fifty shares of Central Railroad stock, sold to him by defendant, and for which plaintiff alleges he paid value. It matters not, in my view of the pleadings, whether plaintiff paid value in money, or currency, or bond, or other thing; if you find that he paid value and the title to the stock has failed, then he is liable. He read 2d request. And I charge you that to be the law.

2d. The second question raised by the defendant is that he received no consideration from plaintiff, because plaintiff gave him *bonds* which were void, had no value, as they had been issued for the purpose of waging war against the United States. It is conceded that had payment been made in Confederate currency, there would have been a consideration, and that plaintiff would be entitled to recover, if entitled to recover at all, the value of the currency. The defendant's request on this point is as follows: (He read request 3d to charge.) I cannot give you this charge as my view of the law. I charge the law in this case to be as follows: That it makes no difference whether plaintiff paid defendant in Confederate bonds or Confederate currency. In one sense both were illegal, both were issued in support of the war waged against the United States Government, but both had a market value in the Confederate States. Our Supreme Court and the United States Supreme Court have held that Confederate currency had a commercial value among private individuals; that it was a medium of exchange, and that, as parties contracted on the basis of the value of that currency, any injured party to such contract has the right to recover, not Confederate currency, but lawful money, to the extent of the value which both parties by their contract, either express or implied, placed on the Confederate currency at the time and place the contract was made. So, I say to you that Confederate bonds had their val-

Cohen *vs.* Ward.

ue, and if parties agreed on the value of the property and chose to take the market value of these bonds as the standard by which they valued the property sold, I can see no reason why the amounts thus fixed upon by the parties cannot be recovered as the price and value of the thing or article sold. I therefore charge you that this contract is not void because Confederate bonds may have been the consideration given for the stock, if you find such facts in this case. This disposes of the fifth request made by defendants, which is as follows: (He read 5th request.) I am requested to charge you that there is a distinction between a sale and an exchange of property by two contracting parties. I am asked to charge you as follows: (He read 6th request.) While I will not stop to consider what distinctions, if any, may exist between a sale and an exchange as to questions of soundness or unsoundness of the article sold or exchanged, I think that on the question of *title* no such distinction exists. In my view, it matters not whether A sells a horse for $100 00 or takes another horse in exchange, valued at $100 00, so far as the question of *title* is concerned. For when a man puts a piece of personal property on the market, it matters not how he may elect to receive payment, he warrants to the person who takes that property that he has "a valid title and the right to sell."

3d. The third point of defense made is, that plaintiff cannot recover any greater sum than the value of the bonds given at the time and place where the contract was made. This, gentlemen, I charge you to be the law, for it has been so held by the highest judicial tribunal in the United States. The Convention of Georgia, in 1865, adopted an ordinance which is generally known as the Scaling Ordinance. (He read the ordinance.) There have been many cases decided by our Courts under this ordinance, and it was passed to give an enlarged power to juries in settling the rights of parties in just such cases as the one you have now to pass upon, and I say to you that you are to judge of the equities between the

parties to this suit.   I have no right to say to you, for instance, that you must find such a value of Confederate bonds, or that you must allow *interest* on the amount you may find from any particular date, or that you must find the value of plaintiff's damages in gold or United States currency.   These are for your determination.   You must estimate the value of plaintiff's loss and damages according to the equities which, under the proof, you shall find to exist between him and the defendant.   (He read plaintiff's 4th request and defendant's 7th request, which do not appear on the record.) I think the correct rule of law is as requested by plaintiff's counsel.   This contract is divisible.   Plaintiff alleges that defendant warranted the title to one hundred shares of stock and that the title to fifty shares has failed.   Plaintiff does not seek to disturb the contract as far as the title has proved valid.   He alleges that he has sustained damages to the extent of the price paid by him for fifty shares.   (If the title to fifty shares has failed, he has the right to be paid the amount of money he gave for those shares, without reference to the other shares the title to which may be good.   The parties fixed the value of the one hundred shares and the defendant cannot now say that fifty shares were worth more than that he then (at the time of the contract) said his one hundred shares were worth.)

The jury found for the plaintiff $2,000 00 in gold, without interest.

Cohen moved for a new trial, upon the grounds that the Court erred in refusing to charge as requested ; in charging as he did in the words in brackets in the last clause of the charge; in holding that this contract was divisible, and because the whole charge was contrary to law, and the verdict was contrary to the law and evidence.   The Court refused a new trial, and error is assigned on each of the grounds for new trial.

(When the cause was called here, Mr. Cohen said he would not move to dismiss the same here, because that would af-

Cohen *vs.* Ward.

firm the judgment against him, but asked that if this Court should hold that the Relief Act of 1870 (which requires an affidavit that plaintiff has paid all taxes chargable on certain old demands) ousted the jurisdiction over this cause, they would send the cause back with an order that it be dismissed below. But this Court said that that question had not been made below, and could not be entertained in this cause. The writ of error in this cause was sued out before the passage of the said Act of the 13th of October, 1870.)

W. B. FLEMMING, HARDEN & LEVY, S. COHEN, for plaintiff in error. This was assumpsit, and the declaration contained: 1st, a special count for breach of warranty of title to fifty shares of Central Railroad stock; and 2d, a general *indebitatus assumpsit* count for money had and received by defendant for plaintiff's use. This being a case of *barter or exchange,* and not of sale, the first count of plaintiff's declaration was not available: 2 Chitty, 274, 281. The contract not having been rescinded, the second count was also bad. That this is a case of barter, see the evidence in the record, and the following authorities: Story on Sales, section 218; Comyn on Contracts, 130; Long on Sales, page 1; Code of Georgia, section 2,614; 3 Salk, 157. As the allegations and proofs must agree, the Court below was wrong in its charge to the jury on this point, and should have granted a new trial: 1 Chit. Pl., (edition of 1833,) 325, 326, 327; 1 Camp. Rep., 361. And the contract not having been rescinded, the second count is also bad, and the plaintiff below was not entitled to recover on that: 1 Chit. Fl., 388; 12 Wheaton, 183; 1 Douglas, 183; 2 McCord, 432; 8 Ga. Rep., 71, etc.; 14 Mees. & Wel., 139; Code of Ga., sections 2599, 2683. Section 2610 of the Code is not adverse, for the reason, that this section refers to a total, and not a partial breach of warranty. Being a suit for *breach of warranty,* the action must be *special.* But, even if there be no dis-

tinction, *in pleading*, between a barter or exchange and a sale, (it being manifest there is such a distinction in that, if in no other particular,) still, this was an *entire* and not a *divisible* or severable contract :   2 Parsons on Cont. 517, etc., and cases there cited; Code of Georgia, sections 2599, 2683.   If this was an entire contract, then, as a matter of pleading, the Judge not only erred in his charge and his refusal of the motion for new trial on that ground, for the reasons already given, but the tendency of such ruling on the trial was to embarrass the defendant, in limiting his defense under the Scaling Ordinance of 1865, and the Relief Act of 1868, page 148.   As the bonds became worthless to Cohen, the jury was bound to consider that fact; and the Court below had no authority to limit or qualify that right, as it did repeatedly:   34 Georgia Reports, 485, 556; 35 Georgia Reports, 117; 36 Georgia Reports, .328; Ordinance of 8th November, 1865; 37 Georgia Reports, 361; 38 Georgia Reports, 350, etc.; 39 Georgia Reports, 597 to 605; 41 Georgia Reports, 136; Act of 1868, Pamph., p. 148.   The Supreme Court of the United States decided that Confederate States Treasury notes were illegal, but were money from the necessity of the case only.   Thorington *vs.* Smith, 8 Wallace.   But bonds of the Confederate States were not money or currency and they were illegal.   In no event could they have been legal.   Their object was to raise money in aid of the rebellion, and that purpose was known to all who received them.   Their purpose was stamped on their face and on the law or act under which they were issued.   See Chief Justice Chase's decision in Virginia newspaper report; 41 Georgia Report, 331; 82d English C. L. Report, 979; 1 East, 1; 5 Burrows, 2589.   Money is the common medium of exchange among civilized nations:   *Encyclopedia Americana.*   Article money, vol. 8; *Ibid*, vol. 3d.   Webster's Dictionary.

Cohen *vs.* Ward.

THOMAS E. LOYD, JACKSON, LAWTON & BASSENGER, HARTRIDGE & CHISOLM, for defendant. Mr. Cohen, when he sold to Ward the one hundred shares of stock, guaranteed the titles to each and every share of said stock: Irwin's Code, section 2609; 37 Georgia, p. 531. There is nothing expressed in this sale; nor can anything be implied which can take this case from the general rule. The title to fifty of the hundred shares of the stock so sold was worthless: 37 Georgia, p. 515. Cohen was, therefore, responsible for the loss of this stock: 37 Georgia, 531. Whether barter or sale, makes no difference: 38 Georgia Reports, 9091; Revised Code, section 2614. Confederate bonds a consideration sufficient to give legal validity to the sale: 38 Georgia, 469; Thorington *vs.* Smith, 8 Wallace, pp. 1, 7, 11, 12. Dean *vs.* Youngells, Adm'r. Ibid, p. 14; Acts 186, p. 32, Constitution of Georgia, Art. 11, section 12; 39 Georgia, pp. 100, 574. The Scaling Ordinance was read to the jury, and given them in charge by the Judge with instruction, that he had no right to instruct them as to its application; but that they should settle the equities according to the proofs between the parties, and such have been the decisions of this Court: 35 Georgia, p. 118. The contract was clearly divisible, because each share of stock had its individuality, and Mr. Cohen might have received his titles to the hundred shares of stock from an hundred different persons: Code of Georgia, sections 2599, 2600. The contract here is executed, not executory: Story on Sales, 186, section 217.

WARNER, J.

Under the pleadings and evidence in this case, as disclosed by the record, the plaintiff was entitled to recover from the defendant for a breach of the implied warranty of title to the fifty shares of railroad stock sold and transferred by the defendant to the plaintiff under the contract, to which he

had no title, and it made no difference, under the law of this State, whether it was a sale of stock for bonds, or a barter or exchange of stock for bonds : Code, 2614.

The Court below erred in its charge to the jury, in restricting them as to the measure of damages which the plaintiff was entitled to recover, to the value of the bonds at the time the contract was made, or to the value placed on them by the parties at the time the contract was made, in view of the provisions of the Ordinance of 1865 : *Evans vs. Walker*, 35th Georgia Reports, 117; *Cherry vs. Walker*, 36th Georgia Reports, 327; *High vs. McHugh*, 38th Georgia Reports, 285. The jury might or might not have believed that the proper measure of damages was the value of the bonds at the time the contract was made, according to the principles of equity applicable to the contract between the parties under the provisions of the Ordinance of 1865. It is true that the Court, in this case, did give the whole of the Ordinance in charge to the jury, but the effect thereof was *practically* neutralized and emasculated by the other objectionable portions of the charge.

Let the judgment of the Court below be reversed and a new trial be granted.